Good morning. May it please the court, counsel. My name is Evangeline Dewan Maloney. I represent Petitioner Anna Garcia-Mejia. This case presents a pure legal question that this court need not reach the merits to decide. Did the agency apply the correct legal standard? The Board of Immigration that requires evidence of a generalized hostility towards women as a class. A requirement this court has never imposed and Rivera prohibits. The agency asked whether Avelio targeted other women. Rivera required the agency to ask why he targeted this woman. Those are different questions. The first was asked. The second was not. That is legal error and remand is the remedy. Under Rivera, the agency was required to examine the underlying premise of why Avelio targeted the petitioner. Not merely whether each individual act of violence was triggered by her gender. That inquiry was never conducted. The agency instead asked whether Avelio harbored a generalized animus towards Salvadoran women as a class. Those are categorically different inquiries. We accept the government's argument that a mixed motive analysis does require a threshold showing that a protected ground was motive at all. The government is correct about the legal framework. Our that the record did not show that Avelio harbored a generalized animus towards members of respondents' proposed particular social groups. Does the BIA have precedent that applies this generalized animus standard? Your Honor, I don't believe it does. There were no cases, I think, that we cited where they do apply a generalized animus standard. Is this the first time that you've seen it? I'm trying to figure out kind of where it came from. Certainly, Your Honor. I don't believe that there are any BIA cases that have expressly held that an applicant for asylum must show a generalized animus towards all members of proposed particular social groups. So your argument is about generalized animus, not animus alone? That is correct, Your Honor. We would certainly concede that animus, some showing of animus, may satisfy the nexus requirement. Some showing that the persecutor targeted the applicant because of the protected characteristic. But the bigger issue in this case is the imposition of a generalized animus requirement, which is much broader than what the statute says. So it's a moment of analysis under the statute and under the precedence of this Court. So it goes beyond animus to a showing that the persecutor targeted or the persecutor has the persecutor targeted other members of this proposed particular social group. And that is a standard that has never been required by this Court, and is at odds with the plain language of the statute. So the government argues that without the animus standard, we run a risk of imposing a general rule that all women who are subject to sexual violence are entitled to asylum. What's your response to that argument? Your Honor, I understand your question, and I want to be very precise about why we're not asking for a per se rule. A per se rule would mean that any time an applicant for asylum experiences sexual violence, that they would automatically satisfy the nexus requirement. And we're asking for something much narrower. We're asking that on this specific record, where five years of conduct is really consistent with only one explanation, and the government has failed to identify any alternative explanation on this record, and that the government really asked the wrong threshold question to begin with, or the agency, excuse me, that this specific case requires remand. So we're not asking for a general rule that all cases involving domestic violence or sexual violence would automatically meet the nexus showing, or the nexus threshold. And I believe that, you know, Cumbara-Cumbara's framework is still going to be left intact, where there is evidence of other motives, such as, you know, financial or territorial or, you know, even sex trafficking, where there is some element of a alternative explanation, those cases are going to rest on that. Let me ask you this. It seems to me that this comes before us in a pretty unusual circumstance, where the only thing I think before us is this nexus question. If we were to grant the relief you ask, would the BIA be able to look at whether she actually has a cognizable social group, and whether the government is able and willing to protect her, and all those other issues that go into it? Certainly, Your Honor, and that would be fact-finding that the agency would need to make upon remand, because those issues are not before this Court. Okay, I am right. The one, we have one narrow nexus. It's a very narrow issue, Your Honor, and that's why we're asking for remand as the relief. It seems to me, and the briefs, I don't think, talk about this, that the particularized gender inquiry, unlike a particularized religion inquiry, is apt to be publicized back home, so to speak, and lead to persecution, violence, or worse. What do we do with that risk? What does the agency do with that risk? Seal it all? So, Your Honor, if I understand your question correctly, I believe you're asking if the petitioner would face harm if she were returned, if she has a wealth of interest in the future. Or others in the community, given her claim of PSGs. Well, Your Honor, I think that question goes back to the issue that we have with the agency's decision, is that it's requiring that the applicant or the petitioner show that this particular abuser has targeted other women. So, I think that's the wrong question to ask, and that's the question the agency asked. But what's the question you would have them ask? You want a particularized inquiry. So, you want evidence about this abuser versus, and to qualify the PSG, he has to reflect standards in the community. So, you're requiring, as I understand your argument, you're requiring evidence that's in every community that is at issue. And I think that, frankly, I think that's dangerous. Yes, Your Honor. If I understand your question correctly, you're asking whether or not we would require, or we would ask the government to inquire as to, or the agency to inquire as to whether he would be a danger to other women in the community. Is that Your Honor's question? Well, they have to. By your stats, that's your test, particularized. So, Your Honor, I don't think our test is, I think that goes beyond what we're asking. It's not femicide in the society. It's femicide in this community. And then she loses, and she's removed, and goes back to that community with those strings attached, so to speak. I think this requires much more care than you're suggesting. Certainly, Your Honor, I understand. And your agency, you would demand the agency do that to our satisfaction. Your Honor, I would ask that the agency apply the correct legal standard that this court has already laid out in Rivera and is consistent with the plan. Rivera. No, Rivera, that's my point. Rivera was religion, right? Certainly, Judge. Not all forms of persecution are on account of persecution. Causes are the same. Certainly, Your Honor. Certainly. But you're demanding that the agency treat them all as the same. No, Your Honor, I don't think that's what we're asking. Now, that's the way the argument reads. That's the way the opinion would read if we wrote it your way. Okay. Your Honor, I think... So, what is the agency supposed to do with that? Certainly, Your Honor. So, we're asking the agency to examine the underlying premise of why Avilio targeted Garcia Mejia, not whether each individual act of violence was triggered by her gender. So, that inquiry was never conducted by the agency. And the agency instead asks, does this abuser, has he harbored, you know, has he targeted other women in the community, and does he harbor a generalized hatred of all women as a class? And that goes beyond what this court requires and the plain language of the statute. Maybe. The agency's threshold inquiry was conducted under the wrong legal standard. The correct inquiry on this record would have produced a different result and triggered a mixed motive analysis. Avilio, a 40-year-old man, selected a 17-year-old girl, established five years of sexual servitude and control, directed exclusively at her body, and reproductive health. And the government has identified no gang objective, no economic purpose, no territorial goal that's served by any of that conduct. I believe my time is over, and I will have a seat. Thank you. Ms. Perlmutter? Good morning. May it please the court. Alexa Perlmutter on behalf of the Attorney General. The court should deny this petition for review because the petitioner concedes on page 6 of her reply brief that she believes she must only show, quote, a causal connection between her harm and the protected ground, but that is not the law. Rather, to prevail on this petition, she must point to evidence compelling the conclusion that what actually motivated Avilio to harm her was her membership in a gender-based particular social group. The fact that the type of harm she experienced has what she calls an underlying gendered premise cannot satisfy that burden. The Supreme Court rejected that precise argument in Elias Zacharias when it found that general political beliefs underlying Gorilla's forced recruitment did not establish that the Gorillas were motivated by the petitioner's political opinion or any other protected ground. The same is true here. It is irrelevant to this petition whether the agency or the government provided an alternative motive. What is relevant is if petitioner met her burden. It is petitioner's burden to establish her eligibility for relief and protection for the agency, and it is now her burden to identify evidence compelling this conclusion. I'd like to speak to Rivera, because Rivera, as a threshold matter, accepted Animus as a proper framing of the Nexus inquiry in this circuit, and it cautioned the agency against ignoring evidence of Animus. In Rivera, the agency ignored evidence that the gang members told the alien to stop preaching, that they threatened harm to the church generally, that they made disparaging comments about religion, and also ignored evidence in the record of an ideological disagreement between the church and gang members. But no such evidence exists in this record. The parties agree that the evidence in this record is limited to the type of harm that petitioner experienced, and the agency concluded, and the government agrees, that that harm is harrowing and rises to the level of persecution. But that does not necessarily mean that it meets the motive inquiry that's required by the statute and by the Supreme Court. You're arguing the factual connection, but it seems, as I understand the argument from your opposing counsel, is that this generalized Animus was the improper standard. Can you speak to that? Sure, Your Honor. That's certainly her argument. I've turned the court to pages 74 through 76 of the administrative record. This is where the immigration judge made its nexus determination. The immigration judge thoroughly consulted the record and thought through the motives in this case, and the reason why the immigration judge looked to whether there was evidence that Avelio harmed other women was because there was no evidence as to why Avelio harmed this petitioner. Petitioner simply did not put that evidence in the record, and that's why the agency looked. Okay, what can we look to if that evidence is not here as to this individual's circumstances? How else are we going to decide why he targeted her? I'm sorry. Go ahead and complete your thought. I just reasonably, in accordance with this court's precedent that harm to others is instructive, Martinez-DeLarza, Fuentes, Gomez-Rivera looked to whether he harmed others in the particular social group when petitioner did not put any evidence as to her specific circumstances of motive into the record. Well, there was at least some evidence, wasn't there? I mean, he held a knife to her stomach and told her to get an abortion, and that can only happen, I think, to a woman, right? But again, the question is not whether there's simply a but-for cause. The question is not whether or because. Isn't the question whether it's one central reason? Yes, and the board has reasonably articulated the animus requirement, which requires an intent to overcome the protected characteristic. If Delio simply may not have wanted to have a child, we don't have evidence in the record as to why he took those actions. Without that evidence, petitioner has not met her burden. And so it's really an evidentiary question here. Again, we don't contest that the type of harm petitioner experienced likely would not have happened to a man, but that is not the nexus inquiry. The inquiry is whether there is an intent to overcome the protected characteristic. What type of evidence would you expect to see or that you thought you would have seen in this kind of case to prove her case or to establish the nexus? For example, there's cases in other courts where individuals, you know, use gender-based slurs, gendered language, talk about the role of women in society, are generally violent towards other women, have, you know, evidence of generally sexist attitudes. We don't have – when an alien puts evidence of this type in this record, which is simply the type of harm she experienced, that is not evidence that gives the agency insight into the motive for that harm. What about the additional evidence here? It's a little bit different than some of the cases that we've seen where perhaps a consensual relationship between a man and a woman turns bad after a few years, and there's violence that perhaps rises to the level of persecution. Here we don't have that. It started out as what's been described as a kidnapping and a violent rape, and then keeping her basically for himself for these years. Why hasn't that set of facts set this apart in terms of the evidentiary level of – the level of evidence that she's presented to show that this really is possibly a target to a woman? Well, I do agree that it's a different category of cases that you describe of that type of relationship. But again, I mean, I think Petitioner – what the evidence reasonably reflects and what the agency found is that Petitioner was vulnerable, and whether her gender contributed to the reason why she was vulnerable, you know, does not compel the conclusion that Avelio was motivated. What drove him to harm her was her membership in a gender-based particular social group. Asylum protects against – you know, protects these protected characteristics that are group-based, that are identity-based. And the fact that she was targeted for a type of harm that, again, would likely not apply to a man does not compel the conclusion. When the agency reckoned with the country conditions evidence showing, one, that gangs target, you know, all members of society, and the fact that different segments of a population are perhaps more vulnerable to specific types of harm just shows that the entire community in different ways is subjected to this gang violence. And there's evidence in the record Petitioner agrees that this individual was a gang member. And so when the agency on page 75 and 76 reckoned with the country conditions evidence showing that gangs target a myriad of populations in different ways, and also gangs target women for different reasons. For revenge, for, you know, to do jobs for them, because these individuals just want to control people. But there's no evidence that it was her membership in a gender-based PSG that he was intending to overcome. And I'd like to just distinguish the Hassan case, where this court, you know, found that female genital mutilation found it did find a nexus. I think that case is distinguishable on the record. There, this court held that there was an intent to overcome the sexual characteristics of a young woman by mutilating them. And the record contained evidence of intent in the form of a widespread and accepted tribal practice, where there was no question what the intent of this tribal practice was. Everyone did it, and that's what Petitioner feared. Here, Petitioner testified that she feared Avelio would be mad at her for leaving. She testified that she feared Avelio would be mad at her for having the child. So those are, you know, a classic interpersonal dispute. Those were the testimony of her fears. And so the agency did not apply a generalized animus standard. It reasonably looked to what evidence in the record do we have here that Petitioner could meet her burden. Can I ask about the standard, about your view of the standard? Because I understand your argument here, but both the immigration judge and the board said specifically generalized animus. And so it's kind of hard to read that without understanding them to say that she needed to show a generalized animus, and particularly with the board's opinion, which is so short, and yet they adopt that phraseology. Do you disagree that they did actually apply that requirement to her case? Yes, I disagree. I mean, perhaps if animus was not part of the board's accepted nexus standard, that would be kind of a new requirement. But the board, you know, since LEA has used the word animus, and ORG defined what animus means in MRMS and matter of ORG. And so the board applied the, you know, binding case law before the board that requires animus. And I think here the board used the word generalized because the immigration judge, the board found no clear error in the immigration judge's findings. And a fair reading of the immigration judge's decision is that it was just, the immigration judge was just looking to what was in the record. And in the absence of any individualized evidence of motive, the immigration judge really had to think about, you know, how are we going to show this type of harm, and reasonably focused and thought about whether there was a generalized animus. So I think, you know, a fair reading of the board's decision is that it applied its binding precedent requiring animus. And the word generalized doesn't, there's no, you know, other than that word, there's no indication that the board ignored evidence of motive that the board did in Rivera. There's just no evidence of animus here, you know, even if that word was not the most precise. I see that I'm out of my time. I'm happy to answer any additional questions. In conclusion, we ask this court to deny this petition for review because the agency provided the correct standard. Thank you. Thank you. And you came across loud and clear, and that was good. I'll give you 30 seconds for rebuttal. I'll make this brief. The government emphasized that there is no evidence that gender played a role in Avelio's motive to harm this petitioner. The agency ignored over 500 pages of country conditions evidence, including the fact that gangs do specifically target women. I think that's thoroughly briefed. Yes, Judge. Simply put, the government cannot get around the fact that the agency applied a heightened legal standard in this case that required petitioner to show that Avelio targeted other women or held a generalized animus or hatred or prejudice or whatever you want to apply the label to towards women as a class. And that is simply not consistent with the plain language of the statute enacted by Congress. I didn't read the IJ's opinion that way. I think it was much more nuanced than what you attack in your briefs. I understand your question, Your Honor. I would note that both the IJ and the BIA explicitly talked about generalized animus and how petitioner had not shown that Avelio targeted other women in this way or held out prejudice towards women as a class. And I think that is categorically the wrong legal question that the agency applied, and that should be reviewed by this court de novo. Thank you. Thank you. The case has been thoroughly briefed and well argued, and we'll take it under advisement.